IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

|  |  |
|---|---|
| BRIAN BAILEY,<br><br>           Plaintiff,<br><br>   vs.<br><br>BRYCE LIEBEL, JOHN<br>STRANDBERG, RUSSELL<br>BROADHURST, JON PULSIFER,<br>and CITY OF HELENA,<br><br>          Defendants. | CV 25–57–H–DWM<br><br><br>OPINION<br>and ORDER |

In August 2025, Plaintiff Brian Bailey sued four individual Helena Police Department Officers and the City of Helena (collectively, "Defendants"), alleging his civil rights were violated when he was arrested and injured after the officers came to his house to conduct a mental health welfare check in October 2023. (Doc. 1.) More specifically, Bailey alleges that officers handcuffed him and forcibly removed him from his residence, causing him to fall face first and fracture his neck. (*Id.*) Bailey has pled the following claims: unlawful seizure and use of excessive force in violation of the Fourth Amendment (Count 1), violation of his right to equal protection under the Fourteenth Amendment (Count 2), and negligence (Count 3). (*Id.*) Bailey is proceeding pro se. (Doc. 32.)

1

Bailey has moved for summary judgment. (Doc. 33). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). The moving party has the initial burden of proof, which means "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Only once that burden has been met does the onus shift to the nonmoving party to identify the facts that establish a genuine issue for trial. *Id.* at 324. Because Bailey has failed to show that he is entitled to relief, his motion for summary judgment is denied.

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Docs. 36, 42, 45, 51), and viewed in the light most favorable to Defendants, *Tolan v. Cotton*,

2

572 U.S. 650, 657 (2014) (per curiam).  Bailey has submitted seven exhibits in support of his motion, (*see* Doc. 51 attachments), and Defendants have collectively submitted six declarations with exhibits attached, (*see* Doc. 42 attachments, Doc. 45-1).  Those exhibits include bodycam footage from Individual Defendant Officers Bryce Liebel, John Strandberg and Russell Broadhurst, as well as from Individual Defendant Corporal Jon Pulsifer.  For the most part, that footage is accurately described by Defendants in their statements of undisputed facts.

On October 22, 2023, Bailey's father, Howard, reported to the Helena Police Department that Bailey was missing, had sent several text messages expressing suicidal ideation, and had previously been taken into protective custody based on suicidal ideation.  (Doc. 45 at ¶ 7.)  Officer Liebel attempted to contact Bailey by phone twice but Bailey told Officer Liebel that Officer Liebel could not help him and hung up.  (*Id.* ¶ 8; Doc. 42 at ¶ 3.)  Officer Liebel reported to Howard and his wife Susan's residence ("Residence") to initiate the process for searching for Bailey, and Howard filled out a Missing Person Initial Entry and NCIC Entry Authorization form.  (Doc. 45 at ¶ 9.)  Howard and Susan provided information about Bailey and his actions, including their concern about him, their desire that he not return, the fact he was not known to carry weapons but "will fight," and that he had been staying with a friend in East Helena.  (Doc. 42 at ¶ 6.)

After Bailey's phone was "pinged" and returned a location around the area

of Butte Avenue and North Sanders Street in Helena, Officer Liebel, Officer Strandberg, and Corporal Pulsifer responded to the area and began to search for him. (Doc. 45 at ¶ 10.) At approximately 10:00 p.m., Officers Liebel, Broadhurst, and Strandburg responded to the Residence to perform a welfare check on Bailey, who Howard reported had returned to the Residence. (*Id.* ¶ 11.) They believed there were sufficient grounds to take Bailey into protective custody. (*Id.* ¶ 12.) The officers were invited into the Residence. (*Id.* ¶ 13.) Howard informed them that Bailey had locked himself in his bedroom and would not come out and that Howard and Susan "don't know what to do with him." (Doc. 42 at ¶ 9.)

The officers proceeded to Bailey's bedroom, where Officer Liebel knocked on the door and requested that Bailey come out to speak with them. (Doc. 45 at ¶ 14.) Bailey refused, yelling insults at the officers and his parents, including: "Get the fuck out of here I fucking hate you guys," "You fucking pussy get the fuck out," "These fucking people aren't my parents I just need a place to sleep," "I know my parents want me out of the house. So where are you going to take me?" "What a fucking piece of shit." (*Id.* ¶ 15.) After approximately four minutes of communicating through the door, Bailey exited aggressively, saying "Who the fuck do you fucking thing you are? Fuck you." (*Id.* ¶ 16.) Bailey then lunged towards Officer Liebel. (*Id.* ¶ 17.) During the subsequent scuffle, Bailey said, "Now I'm mad. I am fucking mad. Do you know how strong I am? I can fucking

ruin you all." (*Id.* ¶ 18.) Officers Liebel and Strandberg escorted Bailey from the Residence in handcuffs as he yelled obscenities at his parents and actively resisted. (*Id.* ¶¶ 19, 20; Doc. 42 at ¶ 13.) When the officers instructed Bailey that they would be exiting the Residence, Bailey yelled, "No, fuck you. Oh no, nope, nope, nope . . . You think you're tough? You're going to push me?" (Doc. 42 at ¶ 14.)

It is at this point that the parties' recollection of events diverges. According to the officers, Bailey pushed himself against Officer Strandberg as Bailey, Officer Liebel, and Officer Strandberg exited the residence, which caused all three men to fall onto the front lawn. (Doc. 45 at ¶¶ 21, 22.) According to the officers, Bailey's push was the sole cause of the fall and Officer Strandberg did not use any offensive or defensive tactics. (*Id.* ¶¶ 23, 24; Doc. 42 at ¶ 19.) Bailey, on the other hand, insists that Officer Strandberg swept his legs out from under him, a belief primarily based on a subsequent statement made by Corporal Pulsifer. (Doc. 51 at 5.) That statement is described below. Because it was dark outside where the fall took place, none of the body cam footage clearly depicts the fall.

In the immediate aftermath of the fall, Bailey repeatedly, and unsuccessfully, asked the officers to remove his handcuffs. (*See* Liebel, Strandberg, and Broadhurst bodycam.) He also shouted, "I broke my neck," and repeatedly stated that he was "hurt." (*Id.*) Approximately a minute after the fall, he told the officers, "I'm sorry, I'm sorry, I'm just fucking done. No, you guys, it's not your

5

fault, it's my fault. My fault. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry." (Doc. 45 at ¶ 26.) Although they refused to remove his handcuffs, (*see* Liebel and Strandberg bodycam), the officers adjusted them after the fall at Bailey's request, (Doc. 45 at ¶ 28). In response to the officers asking if his neck was hurt, Bailey said, "I'm okay, I'm moving around obviously, so it's not like it's broken." (*Id.* ¶ 29.)

Corporal Pulsifer did not observe the fall but arrived on the scene a minute later. (*Id.* ¶ 25; Doc. 42 at ¶ 16.) Officer Strandberg informed Corporal Pulsifer that "we took a tumble [and Bailey] fell on his head. He's complaining of neck pain." (Doc. 42 at ¶ 16.) Corporal Pulsifer immediately requested emergency medical care. (Doc. 45 at ¶ 25.) Corporal Pulsifer asked Officer Broadhurst how Bailey had fallen and Officer Broadhurst said he did not know if "he" was trying to leg sweep but "he" was coming at them and pushing. (Doc. 42 at ¶ 16.) Officer Strandberg stated that Bailey has pushed his body toward Officer Strandberg as they exited, causing the three to fall. (*Id.*) This discussion led Corporal Pulsifer to report in a call with a superior officer: "so [Bailey] started trying to fight officers when they walked him out. He went after [Strandberg] so [Strandberg] went to sweep his legs and I guess his head hit the ground." (*Id.* ¶ 17; Pulsifer bodycam.) However, Corporal Pulsifer subsequently discussed the incident with both Officers Liebel and Strandberg, who confirmed that Bailey pushed Officer Strandberg,

6

causing the fall. (Doc. 42 at ¶¶ 18, 20.)

Approximately eight minutes after the fall, medical personnel arrived on the scene. (Doc. 45 at ¶ 30.) After examining Bailey, medical personnel informed him that he would be transported to the hospital and asked whether he would prefer to go in a patrol car or an ambulance. (*Id.* ¶ 31.) Bailey responded, "Whatever's easiest on you guys" and consented to being transported by patrol vehicle. (*Id.*) He was subsequently transported to the hospital in a patrol vehicle. (*Id.* ¶ 32.)

## ANALYSIS

Bailey seeks summary judgment on the following grounds: (1) the officers' continued presence in the Residence exceeded the legal scope of their entry, (2) they used excessive force in removing him from the Residence, (3) the City of Helena has an unlawful handcuffing policy, and (4) Defendants unlawfully withheld evidence in his underlying criminal proceeding. His motion is denied on all fronts.

## I.    Warrantless Entry

Bailey first argues that the officers violated his Fourth Amended rights when they exceeded the scope of a lawful warrantless entry at the point they discovered that he was safely in his room, citing the "*Wheeler* Standard." (Doc. 34 at 1.) This argument fails both legally and factually.

7

The Fourth Amendment's general prohibition of warrantless entry into a person's home is inapplicable where law enforcement receives the voluntary consent of a person with authority over the residence to enter. *United States v. Matlock*, 415 U.S. 164, 170–72 (1974); *but see Georgia v. Randolph*, 547 U.S. 103, 122–23 (2006) (clarifying that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant). When the officers arrived at the Residence, Bailey's mother greeted them at the door and welcomed them into her home. (Doc. 42 at ¶ 9.) Accordingly, their initial entry was lawful. To the extent Bailey argues that the officers overstayed their welcome after they discovered he was in his room, *see Wheeler v. Am. Univ.*, 619 F. Supp. 3d 1, 31 (D.D.C. 2022) (explaining in the qualified immunity context that officers may not "ignore what they learn as their own investigation progresses"), the record supports the opposite conclusion. The officers never entered Bailey's bedroom or attempted to search the Residence. Rather, Howard, Bailey's dad, informed them that Bailey would not leave his room, likely needed "some help, and Howard "did "not know what to do with [Bailey]." (Doc. 42 at ¶ 9.) Bailey then refused to come out of his room and shouted insults and obscenities through the door. (*Id.* ¶ 10.) The officers continued to attempt to communicate with Bailey, who did not respond in a reassuring manner. (*Id.* ¶ 11.) The officers' continued presence was justified by

the consent of Bailey's parents, as well as the facts and circumstances of Bailey's behavior. Bailey is not entitled to summary judgment on this claim.

## II.    Excessive Force

Bailey argues that because the body cam footage of the incident "blatantly contradicts" the officers' version of events, he is entitled to a finding that the officers used excessive force in violation of the Fourth Amendment under *Scott v. Harris*, 550 U.S. 372 (2007). (Doc. 34 at 2.) In *Scott v. Harris*, the Supreme Court clarified that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. at 380. But that is not the case here. Bailey does not argue that the bodycam footage explicitly shows that the officers purposely swept his legs as he exited the Residence. Rather, Bailey argues that after the incident, Corporal Pulsifer, who did not witness the fall, told another individual that a leg sweep had occurred. Defendants' position that Corporal Pulsifer misunderstood the officers' report and that no leg sweep occurred is not "blatantly contradicted" by the record. As indicated above, it was too dark for any of the officers' body cams to capture the incident. Because this is the sole basis for Bailey's excessive force argument in his motion, summary judgment is denied.

## III.    *Monell* Liability

9

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 659, 694 (1978)). The Ninth Circuit recognizes four situations when local government conduct may be considered a policy: "(1) an official policy; (2) a pervasive custom or practice; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). A local government "may not, however, be sued under a *respondeat superior* theory." *Id.* And the "official policy must be the moving force of the constitutional violation." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (internal quotation marks omitted). Here, Bailey argues that the City of Helena is liable for his injuries under a *Monell* theory because it has a custom of exempting "normal handcuffing" from its use of force reporting. (Doc. 34 at 2.) Despite referring to putative exhibits on this topic, (*see* Doc. 37 at 2), Bailey has presented no evidence regarding the City of Helena's use of force or handcuffing policy. He has therefore failed to meet his threshold summary judgment burden as to this claim. *See Celotex Corp.*, 477 U.S. at 323.

**IV.    *Brady* Violation**

10

Finally, Bailey argues that the City withheld Corporal Pulsifer's statement regarding the "leg sweep" in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). This claim was not pled. (*See* Doc. 1.)  A plaintiff cannot amend his pleadings through summary judgment briefing. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[When a] complaint does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court."); *Elk Petroleum, Inc. v. Rocky Mtn. Reg'l Dir.*, 163 F. Supp. 3d 809, 815 (D. Mont. 2016) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." (internal quotation marks omitted)).  Summary judgment is therefore denied as to this issue.

### CONCLUSION

Based on the foregoing, IT IS ORDERED that Bailey's motion for summary judgment (Doc. 33) is DENIED.

DATED this ⟨11⟩th day of May, 2026.

10:01 A.M.

Donald W. Molloy, District Judge
United States District Court